IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRISTOPHER LOVATO,

    Petitioner,

v.                                                              No. 1:19-cv-01166-JB-LF

ALICIA LUCERO, Warden,
and ATTORNEY GENERAL FOR
THE STATE OF NEW MEXICO,

    Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on petitioner Christopher Lovato's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241,[1] filed December 11, 2019. Doc. 1. Respondents filed an answer addressing the merits of Mr. Lovato's petition on May 20, 2020. Doc. 7. Subsequently, Mr. Lovato moved for an evidentiary hearing on his petition. Doc. 8. United States District Judge James O. Browning referred this case to me to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition. Doc. 3. Having considered the parties' submissions, the relevant law, and the record in this case, I find that an evidentiary hearing is not necessary and recommend denying Mr. Lovato's claims and dismissing this case with prejudice.

---

[1] Although Mr. Lovato's petition was docketed as being brought under 28 U.S.C. § 2254, the Court reviewed the petition and determined that it should be construed under 28 U.S.C. § 2241 because it "attacks the execution of a sentence, including the revocation of good time credits and other prison disciplinary matters." *See* Doc. 5 (internal quotation marks omitted); *see also Yellowbear v. Wyoming Atty. Gen.*, 525 F.3d 921, 924 (10th Cir. 2008) ("Section § 2241 is a vehicle for . . . attacking the execution of a sentence . . . . A § 2254 petition, on the other hand, is the proper avenue for attacking the validity of a conviction and sentence.") (internal citations omitted).

I.      **Factual Background and Procedural History**

Mr. Lovato is an inmate in the custody of the New Mexico Corrections Department ("NMCD"). *See* New Mexico Offender Search, https://cd.nm.gov/offender-search/ (last accessed Sept. 16, 2020). On March 20, 2017, the NMCD issued Mr. Lovato an inmate misconduct report charging him with two major misconduct A-category offenses that transpired while Mr. Lovato was serving his sentence at Guadalupe County Correctional Facility ("GCCF"): A(31) attempt or complicity to commit A(7) assault or battery without a weapon on a staff member, and A(31) attempt or complicity to commit A(19) dealing in dangerous drugs.[2] *See* Doc. 7-1 at 13–14. Lieutenant M. Gallegos prepared the misconduct report following an investigation that consisted of interviews and confidential informant witnesses. *Id*. at 14. The investigation found that: (1) Mr. Lovato had allegedly ordered the assault of a GCCF education instructor, which was carried out by another inmate, Joaquin Ortega, on January 17, 2017, and (2) Mr. Lovato had allegedly introduced dangerous drugs, namely suboxone, into the inmate population at GCCF. *Id*.

On March 21, 2017, an NMCD disciplinary officer received the misconduct report and began an investigation into the matter.[3] Doc. 7-1 at 12–13, 18. The investigation was completed on March 28, 2017. *Id*. at 12. In her investigation report, the disciplinary officer stated that she was changing the charges against Mr. Lovato to a single charge for "A(34) [e]ngaging in security threat group/street gang activity" because "this charge [was] best supported by the misconduct

---

[2] Although the misconduct report was based on events that transpired in January 2017 while Mr. Lovato was housed at GCCF, he was no longer at that facility when the report was issued. *See* Doc. 7-1 at 205 (showing transfer to Penitentiary of New Mexico (PNM) on February 17, 2017).

[3] The record gives conflicting dates regarding when the NMCD disciplinary officer received the misconduct report and began the investigation. *See* Doc. 7-1 at 13 (listing March 21, 2017 as the date the investigation began); Doc. 7-1 at 14, 18 (listing March 22, 2017 as received date).

report." *Id*. at 13. NMCD Policy CD-090101 defines an A(34) offense as "[r]ecruiting, assaulting, theft(s), extorting and drug trafficking or conspiring to commit the above-mentioned acts." Doc. 7-1 at 180.

Because confidential information was used to substantiate the A(34) charge, the disciplinary officer prepared a summary of confidential information to attach to the disciplinary packet in lieu of the original documentation. Doc. 7-1 at 13, 15. The summary stated in relevant part that:

> [Mr. Lovato] [was] identified as being active in the introduction of contraband, and using that contraband as a means of asserting power (shot calling) over other inmates to assist in the introduction of drugs, as well as assaults of inmates and staff alike, while housed at GCCF.
>
> The confidential information obtained indicates . . . [Mr.] Lovato [was] involved in the introduction of drugs, namely Suboxone, through visitation with [his] significant other[], as well as through coercion of other inmates by intimidation and violence. The information indicates . . . [Mr.] Lovato assaulted inmates who did not participate in the[] activity, specifically participating in the introduction of drugs, or the assaults of others.
>
> The confidential information received indicates . . . [Mr.] Lovato ordered the assault of [an] [e]ducation [i]nstructor . . . [which] was carried out by inmate Joaquin Ortega [] on January 17, 2017.

*Id*. at 15. The disciplinary officer decided against providing any additional information because she believed that doing so would be "a threat to security as it may inadvertently identify the [confidential] source(s)." *Id*. A copy of the inmate misconduct report was provided to Mr. Lovato, who by then was housed at PNM.[4] *Id*. at 13. During the investigation, Mr. Lovato declined to provide a statement to the disciplinary officer. *Id*. He did, however, name Joaquin

---

[4] It is unclear from the record whether Mr. Lovato was transferred to PNM as a result of the incidents set forth in the misconduct report. The Court notes that Mr. Lovato contended as much in his state habeas petition. *See* Doc. 7-1 at 53 n.2, 54 (arguing that the "disciplinary conviction singlehandedly catalyzed [his] placement into the solitary confinement prescribed by the Predatory Behavior Management Program" at PNM).

Ortega—the inmate who committed the assault—as a witness. *Id.* Mr. Ortega was contacted by NMCD and provided the following statement: "I do my own number. Nobody can influence me to do anything. He [Mr. Lovato] didn't have nothing to do with it." *Id.*

At the end of the investigation, the disciplinary officer recommended that NMCD conduct a major level hearing based on the misconduct report and evidence gathered during the investigation. *Id.* at 12. Mr. Lovato was provided a copy of all disciplinary materials, including the disciplinary officer's investigation report, findings and recommendation. *Id.* The major level disciplinary hearing was held at PNM on March 31, 2017. *Id.* at 19–21. Mr. Lovato was present at the hearing. *Id.* at 20. According to the summary of evidence and proceedings form completed by the hearing officer, Mr. Lovato declined to call any witnesses. *Id.* Mr. Lovato denied the A(34) charge and submitted a handwritten statement as evidence. *Id.* The hearing officer reviewed Mr. Lovato's submission and denied all of the arguments raised in it. *Id.* at 20–21. The hearing officer found Mr. Lovato guilty of the A(34) charge of engaging in security threat group/street gang activity and recommended that the following sanctions be imposed: loss of all good time credits, thirty days of disciplinary restrictive housing, and 365 days loss of all privileges to include visits, canteen, telephone and all electronics. *Id.* at 19. The deputy warden approved the hearing officer's recommended sanctions. *Id.* As a result, Mr. Lovato forfeited 673 days of earned good time credits[5] in addition to losing privileges for one year and being placed in disciplinary restrictive housing for 30 days. *See* Doc. 7-1 at 66 (discussing loss of good time credits).

---

[5] The record gives conflicting information regarding the amount of good time credit Mr. Lovato forfeited. *See* Doc. 7-1 at 147 (note from NMCD's classification committee that Mr. Lovato was forfeiting 667 days of earned good time credit); Doc. 7-1 at 66 (indicating that based on Mr. Lovato's good time figuring sheet, he would forfeit 673 days).

On April 10, 2017, Mr. Lovato filed a disciplinary appeal to the warden on the grounds that NMCD did not follow its policies during the disciplinary process, that the decision was not based on evidence, and that new evidence or witnesses would change the decision.  Doc. 7-1 at 30.  The warden upheld the hearing officer's decision, finding that there were no "violations of policy that would warrant dismissal."  *Id*. at 38.

On November 14, 2017, Mr. Lovato filed a *pro se* petition for writ of habeas corpus in state district court challenging the disciplinary proceeding and resulting sanctions.  *Id*. at 1–11.  The state court appointed counsel to represent Mr. Lovato, and on February 26, 2019, counsel filed an amended petition for writ of habeas corpus.  *See* Doc. 7-1 at 48–49, 51–57.  In the amended petition, Mr. Lovato argued that his due process rights were violated as a result of the "cumulative effects of multiple deviations from NMCD policy."  *Id*. at 52, 55–57.  The state filed a response in opposition to the amended petition on June 27, 2019.  *See* Doc. 7-1 at 66.  On August 27, 2019, the state court dismissed Mr. Lovato's state habeas petition, finding that Mr. Lovato received all of the due process required for inmate disciplinary proceedings.  *See* Doc. 7-1 at 74–75.  On October 8, 2019, the New Mexico Supreme Court denied certiorari and declined to review the dismissal of Mr. Lovato's habeas corpus petition.  *See* Doc. 7-1 at 78–81 (petition for writ of certiorari); Doc. 7-1 at 148 (order denying certiorari).

Mr. Lovato then filed his petition for writ of habeas corpus under 28 U.S.C. § 2241 in this Court.  *See* Doc. 1.  In his petition, Mr. Lovato raises essentially the same arguments he made in state court challenging the disciplinary proceeding.  He first contends that his due process rights were violated in the disciplinary process.  *Id*. at 5 (arguing that he had a right to "marshal facts and prepare a defense," to "call witnesses," and "present documentary evidence").  Second, he contends that NMCD prison officials violated his right to due process by failing to

follow prison disciplinary procedures and policies. *Id*. at 6. And third, Mr. Lovato contends that the hearing officer failed to consider exculpatory evidence and gave no explanation as to why she did not consider it. *Id*. at 8.

**II.     Mr. Lovato's Motion for an Evidentiary Hearing**

After Respondents filed their answer brief, Mr. Lovato moved for an evidentiary hearing on his § 2241 petition. Doc. 8. In his initial motion, Mr. Lovato argued that an evidentiary hearing is necessary because he did not enter the "entirty [sic] of evidence . . . into the petiton [sic]." *Id*. at 1. In a second request for a hearing, Mr. Lovato submitted documents that are already part of the existing record. *See* Doc. 9 (attaching documents from his disciplinary proceeding and portions of NMCD policies). He also submitted a two-page document reiterating his grounds for relief. *Id*. at 9–11. The following arguments can be gleaned from Mr. Lovato's submission: (1) he was "denied witness testimony"; (2) the hearing disciplinary officer excluded exculpatory evidence, i.e., Mr. Ortega's statement that Mr. Lovato had nothing to do with the assault; (3) sworn affidavit(s) from the confidential informant(s) are necessary; and (4) the confidential informant(s) who provided statement(s) contradicting Mr. Ortega did so "in an attempt to retaliate or in hope of creating a benefiting [sic] factor." *Id*.

Mr. Lovato has failed to present adequate grounds for an evidentiary hearing. "District courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim." *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004). Mr. Lovato's initial motion offers nothing beyond a conclusory assertion that a hearing is necessary so that he may present the "entirety of evidence." He does not specify what this evidence is, nor does he explain how it will support his petition. "Conclusory allegations will not suffice to warrant a hearing." *Andrews v. Shulsen*, 802 F.2d

1256, 1266 (10th Cir. 1986); *see also Pittman v. Fox*, 766 F. App'x 705, 727 n.14 (10th Cir. 2019) (unpublished) (habeas petitioner's argument that he would present "evidence that would clearly expose" the disciplinary hearing officer's bias was insufficient to merit an evidentiary hearing) (internal quotation mark and ellipsis omitted).

Mr. Lovato's second request for a hearing fares no better than his initial motion. The documents submitted with the second request are already part of the record, and Mr. Lovato's two-page submission consists of arguments concerning the merits of his claims without specifying what testimony he expects to marshal at an evidentiary hearing to support those arguments. *See Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) (stating that "an evidentiary hearing is unnecessary if the claim can be resolved on the record"). I therefore recommend that the Court deny Mr. Lovato's motion for an evidentiary hearing.

### III.    Exhaustion and Standard of Review

"A habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254." *Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000); *see also Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005) (noting habeas petitioner seeking relief under 28 U.S.C. § 2241 is required to first exhaust available state remedies, absent showing of futility). "The exhaustion of state remedies includes both state court and administrative remedies." *Parkhurst v. Pacheco*, 809 F. App'x 556, 557 (10th Cir. 2020) (unpublished). "[A] habeas petitioner must exhaust administrative remedies unless prison officials have prevented, thwarted, or hindered his attempts to avail himself of such remedies." *Id.* To exhaust state court remedies, a petitioner must "properly present[ ]" the issue "to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994) (citation omitted); *see*

*also Parkhurst*, 809 F. App'x at 557 (stating that a petitioner "must have first fairly presented the substance of his federal habeas claim to state courts" in order to exhaust state judicial remedies).

Upon review of the record, I find that Mr. Lovato exhausted his available administrative remedies by proceeding through NMCD's disciplinary appeals process. He also exhausted his state court remedies by raising in both his state habeas and certiorari petitions the same grounds for relief that he now sets forth in his § 2241 petition. In addition, Respondents concede that Mr. Lovato has exhausted both his administrative and state court remedies. *See* Doc. 7 at 4; *see also Parkhurst*, 809 F. App'x at 557 (exhaustion requirement for § 2241 petitions is not jurisdictional and may be waived by the state). I therefore will consider the merits of the three claims Mr. Lovato raises in his petition.

As for the merits, a petitioner is entitled to habeas corpus relief under § 2241 if he is able to demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The fundamental purpose of a § 2241 habeas proceeding is to allow a person in custody to attack the legality of that custody, and the traditional function of the writ is to secure release from illegal custody." *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (internal quotation marks and citation omitted). In the Tenth Circuit, federal courts conduct de novo review of § 2241 habeas petitions. *See Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007); *see also Bogue v. Vaughn*, 439 F. App'x 700, 703 (10th Cir. 2011) (unpublished). While the Court construes Mr. Lovato's pro se pleadings liberally, "we must refrain from usurping the role of prison administrators while protecting the constitutional rights of the inmate." *Bogue*, 439 F. App'x at 703 (internal citation omitted).

## IV. Analysis

In his petition, Mr. Lovato challenges on constitutional due process grounds the prison disciplinary proceedings that resulted in the loss of his good time credits.[6] *See* Doc. 1 at 5–8. It is well established that prisoners possess a liberty interest in earned good time credits. *Stine v. Fox*, 731 F. App'x 767, 769 (10th Cir. 2018) (unpublished) (citing *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). Because prisoners possess a liberty interest, they are entitled to due process protections before being deprived of those credits. *Wolff*, 418 U.S. at 558.

When a prison disciplinary hearing may result in the loss of earned credits, a prisoner must be accorded "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff*, 418 U.S. at 563–67. In addition, revocation of good time does not comport with the minimum procedural due process requirements unless the

---

[6] The other two sanctions imposed against Mr. Lovato—loss of privileges and disciplinary restrictive housing—do not constitute protected liberty interests under the due process clause. "[R]estrictions on an inmate's telephone use, property possession, visitation and recreation privileges are not different in such degree and duration as compared with the ordinary incidents of prison life to constitute protected liberty interests under the Due Process Clause." *See Marshall v. Morton*, 421 F. App'x 832, 838 (10th Cir. 2011) (unpublished). As for the sanction of thirty days in disciplinary restrictive housing, Mr. Lovato does not claim, and the record does not indicate, that this placement imposed an atypical and significant hardship on him in relation to the ordinary incidents of life such that it gave rise to a protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) (holding that thirty days of disciplinary segregation was not an "atypical, significant deprivation in which a State might conceivably create a liberty interest"); *see also Hornsby v. Jones*, 392 F. App'x 653, 655 (10th Cir. 2010) (unpublished) (finding that "a sentence of 20 days in disciplinary segregation does not rise to the level of punishment that would invoke constitutional concern").

prison's disciplinary findings are "supported by *some evidence* in the record." *Hill*, 472 U.S. at 454 (emphasis added).

That said, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. Although the right of a prisoner to call witnesses and present documentary evidence is central to the *Wolff* requirements, the right is "necessarily circumscribed by the penological need to provide swift discipline in individual cases." *Ponte v. Real*, 471 U.S. 491, 495 (1985). The right to call witnesses is further subject to the "mutual accommodation between institutional needs and objectives and the provisions of the Constitution." *Id.* (internal quotation marks omitted). "[A]s with a prisoner's request to call a particular witness, prison officials are required to consider a request for documentary evidence on an individualized basis." *Howard v. United States Bureau of Prisons*, 487 F.3d 808, 813 (10th Cir. 2007). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority." *Wolff*, 418 U.S. at 566.

In his habeas petition, Mr. Lovato's first claim for relief is a broad argument that his due process rights were violated in the disciplinary process. *See* Doc. 1 at 5. His second and third claims for relief—that the NMCD did not follow its disciplinary policies and the hearing officer failed to consider exculpatory evidence—are also constitutional due process arguments. *See* Doc. 1 at 7–9. Although Mr. Lovato does not specify which of the due process requirements for prison disciplinary proceedings set forth in *Wolff* he is challenging, I will consider all three requirements in deciding whether he was afforded due process in the disciplinary process.

Turning first to notice, the record demonstrates that Mr. Lovato received written notice of the charges against him at least twenty-four hours before the hearing. *See* Doc. 7-1 at 12–13

10

(indicating that Mr. Lovato received the inmate misconduct report and all disciplinary materials by March 29, 2017, which was two days before the disciplinary hearing). Moreover, although the disciplinary officer amended the charges in the inmate misconduct report, Mr. Lovato was provided advance written notice of the changes the disciplinary officer made at least twenty-four hours before the hearing.[7] *See id*. at 12 (showing that two days before the hearing, Mr. Lovato received a copy of the amended misconduct report as well as the disciplinary officer's investigation report in which she explained the amendments).

I next consider whether Mr. Lovato had "an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense." *Hill*, 472 U.S. at 454. I construe Mr. Lovato's second and third claims for relief—i.e., that the NMCD did not follow its disciplinary policies and the hearing officer failed to consider exculpatory evidence—to be arguments specifically directed to this requirement. The arguments Mr. Lovato raised in his request for an evidentiary hearing are likewise directed to this due process requirement, namely that he was denied the right to present witness testimony and that the NMCD improperly relied upon confidential informants in the disciplinary process. *See* Doc. 9 at 9–11. Mr. Lovato's overarching argument thus is that while he was afforded a hearing, he was not given an opportunity to call witnesses and present exculpatory evidence in his defense, and that the NMCD's failure in this regard was a violation of its prison disciplinary

---

[7] In the documents submitted with his habeas petition, Mr. Lovato repeatedly points out that the charges were changed. *See, e.g.*, Doc. 7-1 at 13, 21 ("They changed the charges" and "They admitet [sic] to changing the charges/dismissing the original charges."). However, NMCD Policy CD-090101 permits disciplinary officers to make amendments to inmate misconduct reports. *See* Doc. 7-1 at 161–62. The policy requires disciplinary officers to provide advance written notice of the amendment at least twenty-fours prior to the hearing, and here it is undisputed that Mr. Lovato received timely advance written notice of the amended misconduct report. Thus, the changes to the inmate misconduct report do not implicate due process concerns.

11

policies and procedures. For the reasons set forth below, I find that Mr. Lovato's arguments lack merit.

Mr. Lovato's assertion that he was denied the right to present witness testimony during the hearing conflicts with the hearing summary in the record. Doc. 7-1 at 20. The summary indicates that Mr. Lovato was given an opportunity to call witnesses during the hearing but expressly chose not to do so. *Id*. The record further shows that Mr. Lovato requested a witness at only one point during the entire disciplinary process. Specifically, during the NMCD disciplinary officer's investigation into the inmate misconduct report, Mr. Lovato listed Mr. Ortega as a witness. *See* Doc. 7-1 at 13. The NMCD disciplinary officer complied with Mr. Lovato's request and obtained a statement from Mr. Ortega regarding the assault of the GCCF education instructor. *Id*. Mr. Ortega's statement was exculpatory in nature because he stated that Mr. Lovato was not involved in the assault. *Id*. The statement was added to the disciplinary record, which the hearing officer reviewed before issuing her decision. *Id*. at 19 (hearing officer stating that her final decision "was based on a thorough review of all documents, evidence and testimony presented in this case"). Thus, even though Mr. Ortega did not testify at the disciplinary hearing, the substance of what he would have testified to was already before the hearing officer, albeit in statement form. That the hearing officer ultimately did not find Mr. Ortega's statement persuasive does not give rise to a due process violation.

Even assuming that Mr. Lovato is correct that he was denied the right to call Mr. Ortega as a witness during the disciplinary hearing, the Tenth Circuit has explained that the "denial of witnesses is not a per se violation of due process in the context of prison disciplinary proceedings." *Bird v. Pacheco*, 729 F. App'x 627, 631 (10th Cir. 2018) (unpublished) (citing *Wolff*, 418 U.S. at 566–67). Indeed, "harmless error review applies to a habeas petition alleging

a denial of the right to present witnesses at [a] prison disciplinary hearing." *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006). In applying harmless error review, "[a] prisoner cannot maintain a due process claim for failure to permit witness testimony unless he also shows that the testimony would have affected the outcome of his case." *Bird*, 729 F. App'x at 631 (internal citation and quotation marks omitted). Here, Mr. Lovato presumably wanted to call Mr. Ortega as a witness so that he could repeat his exculpatory statement. However, because this statement was already in the record, Mr. Ortega's testimony to that same effect would not have altered the outcome of the proceeding. Therefore, even assuming Mr. Lovato was erroneously denied the right to call Mr. Ortega as a witness, any such error was harmless.

Mr. Lovato makes one additional argument in his habeas petition regarding Mr. Ortega's statement. He claims that the hearing officer failed to consider exculpatory evidence.[8] Doc. 1 at 8. There is no indication, however, that the hearing officer did not consider this evidence in reaching her decision. In fact, the hearing officer expressly stated that her decision "was based on a thorough review of all documents, evidence and testimony presented in this case." *See* Doc. 7-1 at 19; *see also id.* (indicating she was finding Mr. Lovato guilty based on the written misconduct report, the supporting statements, and the evidence submitted in the case). Moreover, even if the hearing officer had erroneously failed to consider Mr. Ortega's statement, the statement only concerned the assault of the GCCF educational instructor, which was just one of the grounds for the disciplinary decision. The hearing officer also found Mr. Lovato guilty of the A(34) charge based on evidence of his involvement in the introduction of drugs at GCCF. *See* Doc. 7-1 at 15 (confidential information summary indicating that Mr. Lovato introduced

---

[8] Though he does not identify what this exculpatory evidence is in his habeas petition, I assume that he is referring to Mr. Ortega's statement as it is the only evidence he identifies as being exculpatory in his written submissions to the Court.

drugs "through visitation with [his] significant other[]" or "through coercion of other inmates by intimidation and violence," and that he "assaulted inmates who did not participate . . . in the introduction of drugs"). Thus, regardless of how the hearing officer viewed Mr. Ortega's statement, there was no due process violation because there was other evidence, including the misconduct report and the investigatory findings, to support the hearing officer's decision. *See Hill*, 472 U.S. at 455–56 ("[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits . . . . [T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." (emphasis added)); *see Ruelas v. Zuercher*, 240 F. App'x 796, 797 (10th Cir. 2007) (unpublished) (concluding that due process requirements were satisfied in disciplinary proceeding because incident report alone constituted "some evidence" to support hearing officer's decision to revoke good time credit).

Having determined that Mr. Lovato had notice and an opportunity to be heard, I lastly consider whether there was "a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Hill*, 472 U.S. at 454. It is undisputed that the hearing officer issued a written decision explaining her reasons for finding Mr. Lovato guilty of the A(34) charge and listing the evidence she relied upon in reaching her decision. *See* Doc. 7-1 at 19. Mr. Lovato does not challenge the hearing officer's written decision except to argue that the hearing officer should have included an explanation as to why she rejected Mr. Ortega's exculpatory statement. *See* Doc. 1 at 8. Mr. Lovato relies on *Meeks v. McBride*, 81 F.3d 717 (7th Cir. 1996) for the proposition that where a prisoner produces exculpatory evidence directly undermining the reliability of the evidence in the record pointing to guilt, the prisoner "is entitled to an explanation of why the [decisionmaker] disregarded the exculpatory evidence and refused

to find it persuasive." *Id*. at 720 (citations omitted).  In this case, however, Mr. Lovato's reliance on *Meeks* is misplaced because Mr. Ortega's exculpatory statement did not undermine, and in fact, had no bearing on the drug-related evidence the hearing officer relied upon in her decision. *See Cooper v. Jones*, 372 F. App'x 870, 871–72 (10th Cir. 2010) (unpublished) (finding petitioner's reliance on *Meeks* was misplaced because unlike the evidence in *Meeks*, the petitioner's exculpatory evidence did not undermine the reliability of the other evidence relied upon by the hearing officer).

      Mr. Lovato's final due process argument is that the NMCD failed to follow its disciplinary policies and procedures.  *See* Doc. 7 at 6.  Beyond this conclusory assertion, Mr. Lovato did not identify a particular policy or procedure that he believes prison officials deviated from.  *Id*.  Although he attached portions of NMCD Policy CD-090101 to his petition as well as his request for a hearing, he made no specific argument as to which portions of the policy were not followed.  "Although courts construe a pro se litigant's arguments liberally, this rule of liberal construction stops . . . at the point at which [the court] begin[s] to serve as his advocate." *Whitehead v. Marcantel*, 766 F. App'x 691, 700 (10th Cir. 2019) (unpublished) (internal quotation marks and citation omitted); *see also Johnson v. Miller*, 387 F. App'x 832, 838 (10th Cir. 2010) (unpublished) (indicating that pro se status does not excuse a litigant's obligation to comply with the requirements of the Federal Rules of Civil Procedure and it is not the role of the Court to "make his arguments for him").  I therefore am unable to consider this argument.

      In sum, I find that Mr. Lovato's disciplinary hearing complied with the due process requirements for prison disciplinary proceedings in *Wolff*.  I also find that the state court's decision on Mr. Lovato's habeas corpus petition did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, nor did it result in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018).

### V.     Certificate of Appealability

Lastly, I address whether Mr. Lovato is entitled to a certificate of appealability. No appeal may be taken from a "final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless the petitioner first obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); *see also Montez v. McKinna*, 208 F.3d 862, 869 (10th Cir. 2000) (holding § 2253(c)(1)(A) applies when a state habeas petitioner is proceeding under § 2241). A certificate of appealability may issue only if Mr. Lovato "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As set forth above, I find that Mr. Lovato has failed to make the requisite showing of a violation of a constitutional right. Therefore, Mr. Lovato is not entitled to a certificate of appealability.

### VI.    Recommendation

I recommend that the Court deny Mr. Lovato's motion for an evidentiary hearing (Doc. 8), deny Mr. Lovato's petition for writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1), and dismiss this case with prejudice.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court. In other words, if no objections are filed, no appellate review will be allowed.**

_____
Laura Fashing
United States Magistrate Judge